May 27, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2438

ANIBAL BAEZ VELEZ,

Plaintiff, Appellant,

v.

SECRETARY OF HEALTH & HUMAN SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Torruella, Cyr and Boudin,
Circuit Judges.

Cristina Munoz Gandara on brief for appellant.

Daniel F. Lopez Romo, United States Attorney, Jose Vazquez

Garcia, Assistant United States Attorney, and Nancy B. Salafia,

Assistant Regional Counsel, Department of Health and Human
Services on brief for appellee.

Per Curiam. Claimant, Anibal Baez Velez, appeals

from a district court decision affirming the denial of his

application for Social Security disability benefits.

Claimant alleges that a fractured wrist and dislocated hip

and the resulting pain therefrom have left him disabled. The

Administrative Law Judge (ALJ) concluded that although

claimant's impairments were severe, they did not meet or

equal a listed impairment. Claimant was prevented from

performing his past work as a construction worker and fast

food restaurant crew member, the ALJ concluded, but was not

precluded from performing a significant number of other jobs

in the national economy which require sedentary to light

work. In so concluding, the ALJ found that claimant's

allegations of severe and disabling pain were not credible.

We affirm.

Background

Claimant was born in 1967. He completed high school and

one year of college and has worked in the construction

business and in fast food restaurants. On November 22, 1989,

claimant fell from a second story, sustaining the injuries

complained of in his application for disability payments. He

has not worked since then. Claimant was admitted to the

hospital following his fall and was diagnosed with a fracture

of his right wrist, a dislocation of his left hip and

-2-

fractures of several ribs. He stayed in the hospital for

fifteen days.

Claimant filed an application for Social Security

disability benefits on September 5, 1990, alleging inability

to work due to the following severe impairments:

[M]y left hip always gives away (fails me) and I
feel too much pain. And my right wrist doesn't
function as it did before and frequently hurts. . .
. I don't have the same strength that I had before
in my right hand; I can't lift heavy objects
because I feel pain; when I remain seated for an
extended period of time and try to get up, my left
hip becomes stiff and fixed in place and it hurts a
lot; if I stand for extended periods I begin to
suffer from back pain and hip pain.

The Social Security Administration denied claimant's

application initially and on reconsideration.

Claimant obtained a hearing before an ALJ on July 18,

1991. Claimant was represented by counsel. A Vocational

Expert also testified at the hearing. The ALJ, in a decision

dated August 27, 1991, concluded that claimant "has status,

post-fracture of right radius dislocation of left hip with

minor residuals" but that these impairments are not listed or

medically equal to those listed at 20 C.F.R. Pt. 404, Subp.

P, Appendix 1, ("Appendix 1"). With respect to claimant's

allegations of pain in his arm, back and hip, the ALJ found

them to be "credible so as to preclude arduous exertion,

repeated bending, continuous standing and walking." The ALJ

rejected appellant's contention, however, that his pain was

"of such severity and frequency as to preclude substantial

-3-
3

gainful activity." The ALJ found that claimant was precluded

from performing his past relevant work, but that he "has the

residual functional capacity to perform a wide range of light

to sedentary work." The ALJ therefore concluded that

claimant was not disabled within the meaning of the Social

Security Act at any time prior to the date of that decision

and, accordingly, was not entitled to disability payments.1

Claimant's request for review by the Appeals Council was

denied, and on January 17, 1992, claimant filed a complaint

with the district court seeking review of the ALJ's decision,

pursuant to 42 U.S.C. 405 (g). The district court affirmed

the ALJ's denial of disability payments in a decision dated

October 15, 1992. The district court found that the ALJ

"properly discussed in his decision the reasons why he did

not find plaintiff's subjective symptoms of pain credible" in

accordance with the requirements of Avery v. Secretary of

Health and Human Services, 797 F.2d 19, 22 (1st Cir. 1986),

and "took into account evidence such as plaintiff's daily

activities and observations of examining doctors in reaching

his conclusion, as well as the testimony of a vocational

expert." (Citations omitted.)

Medical Evidence

1. The ALJ found that claimant met the disability insured
status requirements of the Social Security Act on the date of
his accident and continued to meet them through at least June
30, 1990. The exact date on which claimant's insured status
expired was uncertain because of unposted 1989 earnings.

-4-
4

Since his accident, claimant has been seen by doctors at

the State Insurance Fund (S.I.F.) and by a private orthopedic

surgeon, Dr. Alfredo Pinero Pereira. While in the hospital,

claimant's hip was treated with "Buck's traction" and on

December 5, 1989, Dr. Pinero performed an "external fixation

and closed reduction" on claimant's right wrist.

On December 19, 1989, Dr. Pinero examined claimant and

reported that there was decreased external rotation in his

left hip, but that he had full flexion and no "neurovascular

deficit." His right wrist was tender and his flexion was

decreased, but he could fully extend his fingers and had no

sensory deficit. Dr. Pinero prescribed physical therapy and

ordered a CT scan and follow-up visit.

In February, 1990, claimant complained to an SIF doctor

of pain in his pelvis. A CT scan of claimant's pelvis

performed on February 20, 1990 showed small linear

calcification in the joint space and small calcifications in

the acetabulum and in the femoral neck. The radiologist's

report indicated that the calcification in the joint space

might represent an interarticular osseous fragment. The

other calcifictions were compatible with myositis

ossificans.2 Dr. Pinero saw claimant again in April, 1990

2. Myositis ossificans is the inflammation of a muscle
characterized by bony deposits or ossification of muscles. R.
Sloane, The Sloane-Dorland Annotated Medical-Legal Dictionary

(1987).

-5-
5

and reported that he had full range of motion in his hip,

except that he still had decreased external rotation. Dr.

Pinero warned claimant that he might develop arthritis in his

hip if osteochondral fragments were not removed from the

joint.

Claimant saw an SIF doctor on April 25, 1990 and

complained of pain in his hip. Notes from that visit indicate

that he limped a little and had limited anterior and

posterior flexion. Physical therapy was recommended. On May

2, 1990, claimant saw an SIF doctor again. The record shows

that claimant had markedly limited range of motion in his

wrist, reduced grip strength and mild engrossment. He was

able to make a tight fist. Claimant complained of constant

wrist pain, but did not experience numbness. He indicated

that he used his wrist for activities of daily living, but

could not lift heavy objects. Physical therapy was

recommended to increase claimant's range of motion and

strength and to decrease his pain. The record from a May 14,

1990 visit with Dr. Pinero indicates that claimant had 80%

supination and full pronation of his wrist. The doctor

ordered a wrist x-ray and a follow-up appointment in four

weeks.

A May 18, 1990 report from the SIF indicates that

claimant had reported no benefit from physical therapy, but

that his grip strength had increased. Claimant's range of

-6-
6

motion had increased slightly, although it remained markedly

limited. A May 21, 1990 report from Dr. Carlos Fuxench, an

SIF physiatrist, indicated that claimant was able to make a

fist and that the range of motion in his finger joints was

complete. Dr. Pinero examined claimant on June 25, 1990.

He indicated that claimant had full range of motion in his

hip, but that external rotation was painful. He diagnosed

post-traumatic degenerative joint disease of the left hip.3

In September, 1990, claimant visited an SIF doctor again

and reportedly complained of pain in his wrist and hip. The

doctor noted that claimant was leaning on a cane to walk,

which exacerbated the pain in his wrist. A November 5, 1990

report from the SIF indicated that claimant complained of

pain in his wrist, but that there was no edema and that

flexion and extension were accomplished with difficulty. Dr.

Torres from the SIF examined claimant on November 14, 1990,

and noted that the pain in claimant's hip was intermittent

and worsened when he leaned forward. Although the area was

tender, Dr. Torres reported that claimant had full range of

motion and muscle strength in his left hip. He also reported

3. Degenerative joint disease is characterized by
degeneration of the articular cartilage, hypertrophy of bone
at the margins, and changes in the synovial membrane. "It is
accompanied by pain and stiffness, particularly after
prolonged activity." The Sloane-Dorland Annotated Medical-

Legal Dictionary.

-7-
7

that claimant was walking adequately unassisted. He diagnosed

trochanteric bursitis.4 Continued pain medication and

stretching exercises were prescribed.

In December, 1990, the SIF doctors prescribed 20 mg/day

of Feldene (a medication given to inhibit inflammation and

pain). Claimant complained of pain in his wrist and hip. In

January, 1991, Dr. Pinero saw claimant and reported that he

complained of intermittent episodes of pain. He noted that

the hip dislocation would probably lead to arthritis,

requiring further surgery, but that claimant wanted to

postpone surgery until the pain became intolerable. Dr.

Pinero recommended x-rays. The x-ray report indicated "no

evidence of recent fracture, soft tissue calcifications or

other complication" in claimant's wrist. The x-ray showed a

"deformity in the distal radius and the ulnar styloid,

presumably result of an old healed fracture." The hip x-ray

indicated "a bony projection arising from the greater

trochanter of the femur which may be related to tendinitis or

to previous traumatic episodes." There was no evidence of a

present or past hip fracture and the "sacroiliac and

coxofemoral joint spaces" were preserved.

4. Bursitis is the inflammation of a bursa, "a sac or
saclike cavity filled with viscid fluid and situated at
places in the tissues at which friction would otherwise
result." The Sloane-Dorland Annotated Medical-Legal

Dictionary.

-8-
8

Claimant's final reported visit with Dr. Pinero was on

February 5, 1991. The doctor reported that claimant

complained of hip pain, but that he had full flexion,

internal rotation and abduction in his hip, and 40% external

rotation. The report noted that the x-rays showed post-

traumatic degenerative joint disease which might explain pain

symptoms. Dr. Pinero also noted that avascular necrosis is

another complication that can occur with degenerative joint

disease and explain pain.5 Finally, Dr. Pinero recommended

that if conservative treatment fails, claimant "could be a

candidate for hip fusion."

On March 20, 1991, claimant saw an SIF doctor.

Although claimant complained of pain in his hip and wrist,

the report noted no edema and no deficit in flexion-extension

and that fingers close. No difficult gait was observed.

Finally, a June 20, 1991 report from an SIF doctor stated

that claimant is not willing to undergo a hip fusion,

although he still complained of pain in his hip and forearm.

Discussion

On appeal, claimant argues that the decision to deny him

disability benefits is not supported by substantial evidence.

Claimant specifically contends that the finding that

5. Avascular necrosis describes "the sum of morphological
changes indicative of cell death" caused by deficient blood
supply to the affected area. The Sloane-Dorland Annotated

Medical-Legal Dictionary.

-9-
9

claimant's medical condition does not meet or equal listing

1.03 (arthritis of a major weight-bearing joint) in Appendix

1 of the regulations was erroneous and that the district

court, in affirming the denial, failed to give proper credit

to claimant's subjective complaints of pain.

The Social Security Act establishes the following

standard of review in this case: "[t]he findings of the

Secretary as to any fact, if supported by substantial

evidence, shall be conclusive, . . . " 42 U.S.C. 405(g).

Therefore, the Secretary's decision to deny claimant

disability payments in this case must be affirmed "if a

reasonable mind, reviewing the evidence in the record as a

whole, could accept it as adequate to support his

conclusion." Rodriguez v. Secretary of Health & Human

Services, 647 F.2d 218, 222 (1st Cir. 1981). "It is the

responsibility of the Secretary to determine issues of

credibility and to draw inferences from the record evidence."

Ortiz v. Secretary of Health and Human Services, 955 F.2d

765, 769 (1st Cir. 1991) (Per Curiam).

Following the sequential steps set forth at 20 C.F.R.

404.1520, the ALJ first found that claimant had not worked

since January 22, 1989. Second, he determined that claimant

had a severe impairment, termed "musculoskeletal

involvement." Third, the ALJ concluded that claimant's

impairments did not meet or equal the criteria in the Listing

-10-
10

of Impairments in Appendix 1 of the regulations. Fourth, he

found that claimant's impairment prevented him from

performing his past relevant work as a construction worker

and a crew member at a fast food restaurant. Finally, the

ALJ concluded that although claimant was limited to

performing sedentary to light work, his impairments did not

prevent him from doing any other work. Therefore, the ALJ

found the claimant not disabled.

Claimant takes issue on appeal with the ALJ's findings

at steps three and five. He argues that his combined

impairments "meet in severity the musculoskeletal listing

criteria." Specifically, claimant argues that his hip injury

meets the musculoskeletal impairment listed at section 1.03

of Appendix 1: "arthritis of a major weight-bearing joint

(due to any cause)." While conceding that his wrist injury

does not alone meet or equal a listed impairment, claimant

argues that when the hip and wrist injury are evaluated in

combination they meet or equal the severity of the impairment

listed at section 1.03.

Section 1.03 provides as follows:

1.03 Arthritis of a major weight-bearing joint

(due to any cause):

With history of persistent joint pain and
stiffness with signs of marked limitation of motion
or abnormal motion of the affected joint on current
physical examination. With:
A. Gross anatomical deformity of hip or knee
(e.g., subluxation, contracture, bony or fibrous
ankylosis, instability) supported by X-ray evidence
of either significant joint space narrowing or

-11-
11

significant bony destruction and markedly limiting
ability to walk and stand; or
B. Reconstructive surgery or surgical
arthrodesis of a major weight-bearing joint and
return to full weight-bearing status did not occur,
or is not expected to occur, within 12 months of
onset.

20 C.F.R. Pt. 404, Subp. P, Appendix 1, 1.03.

Claimant has the burden of demonstrating the existence

of an impairment or combination of impairments that meet or

equal the criteria in the Listing of Impairments at Appendix

1. See Dudley v. Secretary of Health and Human Services, 816

F.2d 792, 793 (1st Cir. 1987). There is substantial evidence

to support the ALJ's determination that claimant did not meet

this burden. Section 1.03 of the listings requires a "gross

anatomical deformity . . . markedly limiting ability to walk

and stand." The ALJ specifically found that "since about

September 1990 the record fails to show ongoing use of [a]

cane [to assist ambulation]." In addition, the ALJ noted

that "[d]uring the hearing on July 8, 1991 the claimant was

observed to walk without the use of a cane" and that he

"stood for 10 minutes early in the hearing."

The medical evidence, summarized above, supports the

ALJ's finding that the injury did not meet or equal the

listing criteria. Claimant was observed to limp a little at

his April, 1990 visit to the SIF and at his September, 1990

visit claimant used a cane. Dr. Pinero's June, 1990

examination of claimant, however, indicated that he had full

-12-
12

range of motion in his hip, although external rotation was

painful. In November, 1990, Dr. Torres reported that

claimant had full range of motion and muscle strength in his

hip and that claimant was "walking adequately unassisted."

In February, 1991, Dr. Pinero reported that claimant had full

flexion, internal rotation and abduction. Finally, on March

20, 1991, an SIF report notes that "no difficult gait was

observed." Claimant's wrist injury cannot, even in

combination with his hip injury, satisfy the requirements of

1.03. Therefore, the district judge did not err in

affirming the ALJ's determination that claimant's impairment

did not meet or equal a listed impairment.6

Claimant argues that the ALJ erred in not obtaining the

assistance of a medical expert in order to assess the

severity of claimant's physical limitations and whether they

equal a listed impairment. It does not require medical

expertise, however, to determine whether claimant is markedly

limited in his ability to walk or stand, a requirement of

1.03 of the listings. Therefore, the ALJ did not err in

making this commonsense judgment without the assistance of a

6. Claimant also suggests that his impairments meet or equal
the impairments listed at sections 1.04 and 1.12 of the
Appendix. Section 1.04, however, requires arthritis of one
major joint in each of the upper extremities. Section 1.12

requires fracture of an upper extremity where functional use
is not restored within twelve months. The medical evidence
supports the ALJ's conclusion that these requirements were
not met.

-13-
13

medical expert. (Cf. Gordils v. Secretary of Health and

Human Services, 921 F.2d 327, 329 (1st Cir. 1990) ("the

Secretary is not precluded from rendering commonsense

judgments about functional capacity based on medical

findings, as long as the Secretary does not overstep the

bounds of a lay person's competence and render a medical

judgment.").

Claimant also alleges on appeal that the ALJ did not

adequately consider his allegations of disabling pain. The

ALJ found that claimant's allegations of pain were "credible

so as to preclude arduous exertion, repeated bending,

continuous standing and walking. Otherwise they are not of

such severity and frequency as to preclude substantial

gainful activity." The ALJ considered claimant's testimony

in light of the other record evidence. Claimant testified

that he sometimes experiences shooting pains extending from

his back to his hip. He stated that he was taking pain

medication ("Dolabid") two or three times a day and that it

sometimes helped. Claimant also testified that the pain in

his back and hip was constant and that it hurt his arm to

lift twenty pounds or to continually carry lighter weights.

He stated that it hurt his wrist to grasp something.

The record contains objective medical evidence of

impairments that could reasonably be expected to cause

claimant pain. Dr. Pinero diagnosed claimant with post-

-14-
14

traumatic degenerative joint disease in his left hip. This

condition is "accompanied by pain and stiffness, particularly

after prolonged activity." R. Sloane, The Sloane Dorland

Annotated Medical-Legal Dictionary (1987). Dr. Pinero also

noted that avascular necrosis can occur with degenerative

joint disease and cause pain. Dr. Torres diagnosed bursitis,

which has been characterized as a medical condition

"reasonably capable of causing disabling pain." Sewell v.

Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). Nonetheless, as

the ALJ noted in his decision, "[t]he record fails to

establish significant or persistent weakness or functional

limitation." The ALJ concluded that claimant's allegations

of severe and disabling pain were "unsupported by the

objective findings which fail to disclose severe osseous or

neurological involvement or residuals."

Where allegations of disabling pain are unsupported by

objective medical evidence, the ALJ is required to obtain

detailed descriptions of claimant's daily activities,

functional restrictions, medication and other treatment for

pain, frequency and duration of pain, and precipitating and

aggravating factors. See Avery v. Secretary of Health and

Human Services, 797 F.2d at 23; SSR 88-13. The ALJ

thoroughly questioned claimant in accordance with the above

requirements. Claimant testified at his hearing before the

ALJ that he used his right hand for eating, dressing, writing

-15-
15

and shaving. He further testified that he sometimes lifted

his two-year-old child. In his application for disability

payments, claimant described his daily activities as

including house cleaning, taking out the garbage, shopping,

doing the dishes, visiting friends, attending church and the

movies. At his hearing, however, claimant testified that

typically he spent all day watching television.

The ALJ specifically found that claimant's allegations

of severe and disabling pain were not credible. This

credibility determination, especially when supported by

specific findings, is entitled to deference. Fustaglia v.

Secretary of Health and Human Services, 829 F.2d 192, 195

(1st Cir. 1987). In addition to the lack of supportive

objective medical evidence, the ALJ also found that the

allegations were unsupported by claimant's "conservative

treatment, his demeanor, his daily activities, and other

evidence of record." The ALJ found claimant's allegations

of pain credible only to the extent that they "preclude

arduous exertion, repeated bending, continuous standing and

walking." He therefore made the following determination

regarding claimant's residual functional capacity:

The claimant has the residual functional capacity
to perform the physical exertional requirements of
work except for arduous physical exertion,
repetitive, bending, lifting or carrying in excess
of 20 lbs or continuous standing or sitting.

-16-
16

This conclusion is substantially supported by the

medical evidence summarized above. In May, 1990, claimant

told a treating physician at the SIF that he used his wrist

for activities of daily living, although he could not lift

heavy objects. A May, 1990 report from the SIF indicated

that claimant's grip strength and range of motion had

increased. An x-ray report from 1991 indicated "no evidence

of recent fracture, soft tissue calcifictions or other

complication" in claimant's wrist. After an examination of

claimant on November 14, 1990, Dr. Torres reported that the

pain in his hip was intermittent. A March, 1991 report from

SIF indicated no edema and no deficit in flexion-extension of

claimant's wrist. A February, 1991 report by treating

physician Dr. Pinero indicated that claimant had full

flexion, internal rotation and abduction in his hip, and 40%

external rotation.

The RFC form completed by a nonexamining physician on

March 21, 1991, also supports the ALJ's findings. The RFC

reveals that claimant occasionally can lift and carry fifty

pounds and frequently can lift and carry twenty-five pounds.

He can only occasionally climb, balance, kneel and crawl.

However, he can sit, stand and walk for up to six hours per

work day. He is limited in the weight that he can push

and/or pull to ten pounds because of his wrist injury. The

RFC also noted that claimant's gross manipulation abilities

-17-
17

were limited somewhat by his wrist injury, but that his

reaching and fine manipulation abilities were not limited.

The vocational expert testified that there were jobs

existing in significant numbers in the national economy which

claimant can perform, given his residual functional capacity,

age, education and work experience. These included the

following light to sedentary semi-skilled jobs: cashier,

counter clerk, shipping clerk and general office clerk.

Having reviewed the entire record, we conclude that the

ALJ's findings are supported by substantial evidence,

including medical evidence from claimant's treating

physicians, claimant's testimony at the hearing before the

ALJ, the RFC prepared by a non-examining physician and the

testimony of the vocational expert. Where the facts permit

diverse inferences, we will affirm the Secretary so long as

the inferences drawn are supported by the evidence.

Rodriguez Pagan v. Secretary of Health and Human Services,

819 F.2d 1,3 (1st Cir. 1987). Therefore, the district court

did not err in affirming the ALJ's decision denying

disability payments.

For the foregoing reasons, the judgment of the district

court is affirmed.

-18-
18